ALBERT AND BARBARA McISAAC, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McIsaac v. Commissioner
Docket No. 22486-88.
United States Tax Court
T.C. Memo 1989-307; 1989 Tax Ct. Memo LEXIS 294; 57 T.C.M. (CCH) 793; T.C.M. (RIA) 89307; June 26, 1989. Albert McIsaac, pro se. Randall Andreozzi, for the respondent. GUSSIS
MEMORANDUM OPINION GUSSIS, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) of the Internal Revenue Code and rule 180 et seq. [1]
*295 Respondent determined a deficiency in petitioners' Federal income tax for 1985 in the amount of $ 1,386. The sole issue for decision is whether certain advances to petitioner Albert Mclsaac in prior years and repayable out of future commissions constituted income to the petitioners in the taxable year 1985 when the obligation to repay the balance of unreimbursed advances was discharged. Some of the facts were stipulated and are so found. Petitioners filed a joint Federal income tax return for the year in issue. Petitioners resided in Boston, Massachusetts at the time the petition herein was filed. Albert McIsaac (petitioner) was employed as a salesman by Pappas Management Corp. (Pappas) during 1982 and part of 1983. Until 1982, Pappas paid its salesmen salary and sale commissions on a weekly basis. Sometime around June 20, 1982, following a business merger, Pappas began to pay its salesmen on a monthly basis. At the same time, Pappas began to allow its salesmen to draw advance commissions. Each salesman was obligated to repay the advances out of future commissions. Pappas did not withhold taxes on the advances, nor did Pappas report unreimbursed advances on the salesman's *296 Form W-2 at the close of the taxable year. At the time petitioner stopped working for Pappas as a salesman early in 1983, there existed a balance of $ 4,120 in outstanding advances. In 1985, Pappas terminated a money purchase pension plan it had maintained for its employees. Pappas had previously been advised by the U.S. Department of Labor that petitioner could not assign his rights to the retirement benefits to Pappas in order to satisfy his obligation to repay the outstanding advances. Moreover, petitioner indicated he would not repay the advances out of his share of the pension plan distribution. Consequently, at the close of 1985, Pappas charged-off petitioner's unreimbursed advances. Pappas then issued a Form 1099 to petitioner in the amount of $ 4,120 to reflect non-employee compensation for the taxable year 1985. On his Federal income tax return for 1985, petitioner did not include in income the amount of $ 4,120 reported by Pappas on the Form 1099. In his statutory notice of deficiency, respondent determined that the $ 4,120 was includible in petitioner's taxable income for 1985. Respondent contends that the $ 4,120 is income from the discharge of indebtedness. *297 Section 61(a)(12) specifically provides that gross income includes income from discharge of indebtedness. Petitioner initially alleged in his petition that the advances in issue were included in income for the taxable years 1982 and 1983. The record clearly shows, however, that the advances were not treated as taxable income when received by petitioner. In any event, petitioner did not seriously pursue this argument at the trial. Petitioner's alternative contention, advanced at trial, is that he was obligated to repay his advances only out of future commissions and that when he ceased working for Pappas he no longer was obligated to repay the advances. Petitioner's interpretation of the arrangement with Pappas is not supported by the record. In fact, it is refuted by the testimony of Mr. James J. Smith, the Treasurer of the Pappas organization who supervised the program of making advance payments to salesmen. Mr. Smith testified that as long as a salesman was earning commissions the repayment of advances would come from future commissions. Mr. Smith emphasized that salesmen who terminated *298 their association with Pappas continued to be obligated to repay the advances received from the company. We believe that the testimony of Mr. Smith accurately reflects Pappas' intent to enforce petitioner's obligation to repay the advances after he left Pappas in 1983. There is nothing in the record to show that Pappas ever intended the advances to be anything other than loans repayable in the future. See Lehew v. Commissioner,T.C. Memo. 1987-389. We believe the record clearly establishes that petitioner was indebted to Pappas for the balance of the unpaid advances through 1985 and that such indebtedness was discharged in 1985 after Pappas ceased its efforts to obtain repayment of the obligation from petitioner. We hold therefore that the amount of $ 4,120 is includable in petitioner's taxable income in 1985. Section 61(a)(12). Respondent's determination is sustained. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩